```
_____ FILED        _____ ENTERED
_____ LODGED       _____ RECEIVED

           JUN 24 2024    MH

              AT SEATTLE
       CLERK U.S. DISTRICT COURT
    WESTERN DISTRICT OF WASHINGTON
BY _____                    DEPUTY
```

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. BLOCKQUOTE, INC.,<br><br>Plaintiff-Relator,<br><br>v.<br><br>VIX TECHNOLOGY (USA) INC.,<br><br>Defendant. | NO. 2:24-CV-00904-JCC<br><br>COMPLAINT AND JURY DEMAND<br><br>**Filed Under Seal**<br>pursuant to<br>31 U.S.C. § 3730(b)(2) |

## NATURE OF THE ALLEGATIONS

1.  Relator Blockquote, Inc. brings this action on behalf of itself and the United States of America against Defendant Vix Technology (USA) Inc. for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2.  This action seeks to recover funds that were loaned to Defendant through the federal Government's Paycheck Protection Program ("PPP") and forgiven as a result of a false application.

3.  Vix Technology (USA) Inc. is a subsidiary of the multinational conglomerate Vix Technology Group. It received a Second Draw PPP loan of more than $1 million. The entire loan was forgiven including interest.

**COMPLAINT AND JURY DEMAND - 1**

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4. Under the SBA's affiliation rules—which were clarified in May 2020 to include domestic and foreign affiliates—employees of foreign entities in the Vix Technology Group should have been included in any eligibility analyses. Had they been, the company would not have been eligible for Second Draw PPP funding.

5. Vix Technology (USA) Inc. should be required to repay the loan, interest, and processing fee with penalties.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

7. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as one or more Defendant transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## PARTIES

8. At the time of the conduct discussed herein, Defendant Vix Technology (USA) Inc. ("Vix USA") had a principal office address of 2401 4th Avenue, Suite 830, Seattle, WA 98121.

9. Vix USA's current principal office address is 200 E 5th Street, Suite 301, Tempe, AZ 85281.

10. Vix Technology Group is a global automated ticketing and fare collection technology company. It was originally based in Australia. Vix Technology Group's Australian headquarters is located at Level 4, 5 Mill Street, Perth WA 6000.

11. In November 2020, Vix Technology Group was acquired by ICM Mobility Group, Ltd., a British company.

12. The new parent company for Vix Technology Group, Vix AFC Ltd., is a subsidiary of ICM Mobility Group based in the United Kingdom. Vix Technology

COMPLAINT AND JURY DEMAND - 2

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Group's European headquarters is located at 8 The Irwin Centre, Dry Drayton, Cambridge, CB23 8AR, UK.

13. According to ICM Mobility Group's Audited Financial Report for the period ending June 30, 2021, the company owned 100% of Vix AFC Ltd.; Vix Holdings Ltd.; Vix Technology, Ltd.; and Vix Tech Pte Ltd. In sum, ICM Mobility Group owned 100% of Vix at that time.

14. Vix AFC Ltd.'s Financial Report for the Year Ended June 30, 2021 ("Vix AFC's FY 2021 Report") explains that Vix AFC Ltd. was a dormant company until April 30, 2021, when it acquired the Vix Technology Group subsidiaries from Vix Holdings Ltd. "and became the ultimate parent of the Group." The acquisition included Vix Mobility Pty Ltd., which owned 100% of Vix Transportation Systems Pty Ltd., which owned 100% of Vix Holdings Pty Ltd., which owned 100% of Vix Technology (USA) Ltd.

15. Blockquote, Inc. is a company based in California that produces public interest research, news reporting, and investigations.

## THE PAYCHECK PROTECTION PROGRAM

16. During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

17. Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

COMPLAINT AND JURY DEMAND - 3

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

18. The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

19. The Economic Aid Act (P.L. 116-260, in the Consolidated Appropriations Act of 2021), authorized and funded a Second Draw PPP Loan program.

20. For Second Draw PPP Loans, lenders were compensated by the federal government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the amount of five (5) percent for loans of more than $50,000 and not more than $350,000, and in the amount of three (3) percent for loans above $350,000.

21. Each borrower certified on the Second Draw loan applications that they were eligible to receive the loans under the program guidelines and that their applications and supporting documentation were accurate.

22. Borrowers were later able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities during either the 8- or 24-week period after disbursement.

## FACTUAL ALLEGATIONS

23. When the PPP rules were first introduced, there was confusion regarding whether applicants with foreign affiliates were supposed to include their employees or revenues when considering eligibility. As discussed below, on May 5, 2020, the SBA issued guidance in one of the program FAQs indicating that they were included in the affiliation count, and on May 21, 2020, an Interim Final Rule was published that again clarified that foreign employees were to be included. 85 Fed. Reg. 30835,

COMPLAINT AND JURY DEMAND - 4

30836. However, because the rule had been previously unclear, the SBA exercised enforcement discretion to not find a borrower ineligible under this calculation including foreign employees if it applied for the PPP loan prior to May 5, 2020. *Id.* at 30837.

24. Vix Technology (USA) Inc. was approved for a First Draw PPP loan of $1,061,800 by Citibank, N.A. on April 28, 2020. It reported 63 jobs. It listed NAICS code 522320 (Financial Transactions Processing, Reserve, and Clearinghouse Activities). The loan plus interest was forgiven for a total of $1,071,799. Because this loan was applied for during the safe harbor period, Vix USA was not required to include foreign employees.

25. Vix Technology (USA) Inc. was approved for a Second Draw PPP loan of $1,066,900 by Citibank, N.A. on May 18, 2021. It reported 52 employees. It listed NAICS code 541512 (Computer Systems Design Services). The loan plus interest was forgiven for a total of $1,072,057.

26. Vix USA applied for both loans with its Seattle, WA address.

27. Vix USA was not eligible for the Second Draw loan because, when including affiliated entities in the Vix Technology Group, it exceeded the 300-employee size standard.

**A.    Application of the Affiliation Rules to Foreign Entities**

28. When multiple entities are operated under common ownership or management, the SBA generally applies "affiliation rules" that require the various entities to consolidate their employee count when evaluating their loan eligibility. Under the Interim Final Rule published and effective May 21, 2020, "Paycheck Protection Program—Treatment of Entities With Foreign Affiliates," the SBA clarified that:

COMPLAINT AND JURY DEMAND - 5

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

> SBA's affiliation rules provide that in determining an entity's number of employees, employees of the entity "and all of its domestic and foreign affiliates" are included. As a result, in most cases, a borrower is considered together with its U.S. and foreign affiliates for purposes of determining eligibility for the PPP.... To provide further clarification of this methodology, SBA issued guidance on May 5, 2020 (FAQ 44) stating that an applicant must count all of its employees and the employees of its U.S. and foreign affiliates, absent a waiver of or an exception to the affiliation rules.

85 Fed. Reg. 30835, 30836.

29.  The Interim Final Rule, Section I, concluded, unequivocally, that "If an applicant, together with its domestic and foreign affiliates, does not meet the 500-employee or other applicable PPP size standard, it is not eligible for a PPP loan." *Id.*

30.  The Interim Final Rule repeated this requirement again in Section II:

> Therefore, to calculate the number of employees of an entity for purposes of determining eligibility for the PPP, an entity must include all employees of its domestic and foreign affiliates, except in those limited circumstances where the affiliation rules expressly do not apply to the entity. Any entity that, together with its domestic and foreign affiliates, does not meet the 500-employee or other applicable PPP size standard is therefore ineligible for a PPP loan.

*Id.* at 30836-37 (footnote omitted).

31.  The Second Draw PPP program adopted, in relevant part, these same affiliation rules, except that the employee count was reduced from 500 to 300, as was consistent with the change in the general eligibility requirements. 86 Fed. Reg. 3712, 3714-15 (January 12, 2021), codified in 13 C.F.R. § 121.

**B.  Affiliation Rule Waiver Requirements**

32.  To avoid application of the affiliation rules, Vix USA would have to meet one of three affiliation rule waiver requirements.

33.  Pursuant to 86 FR 3712, 3714-15 (Jan. 14, 2021), the affiliation rules are waived under the PPP program for any of the following three reasons: (1) any

COMPLAINT AND JURY DEMAND - 6

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

business concern with less than 300 employees that, as of the date on which the loan is funded, is assigned a North American Industry Classification System (NAICS) code beginning with the digits 72; (2) any business concern operating as a franchise that is assigned a franchise identifier code by the U.S. SBA; and (3) any business concern that "receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958," *i.e.*, a "small business investment company." "Financial assistance" includes any type of financing listed in 13 C.F.R. § 107.50, including loans and equity. Paragraph 7(a)(36)(D)(iv) of the Small Business Act (15 U.S.C. 636(a)(36)(D)(iv)).

34. Upon information and belief, none of these waivers apply. Vix USA was not assigned a NAICS code for a food and beverage business, nor has it been assigned a franchise identifier code. It is also extremely unlikely that a company held by a multinational conglomerate would have applied for SBIC lending.

### C. Vix USA was Affiliated with the other Entities in the Vix Technology Group

35. Vix USA was affiliated with the other entities in the Vix Technology Group under the SBA's Affiliation Rules for PPP Loans, under the ownership test and possibly the management test.

36. The "affiliation based on ownership" test states that:

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.

**COMPLAINT AND JURY DEMAND - 7**

37.     Notwithstanding a number of intermediate holding companies, ICM Mobility Group Ltd. ultimately owns Vix AFC, which in turn ultimately owns the various entities that make up the Vix Technology Group.

38.     This corporate restructuring concluded on April 30, 2021, and so Vix AFC's FY 2021 Report incorporates the operations of the subsidiaries for only May and June 2021. Since Vix USA's PPP loan was approved on May 18, 2021, the included data is therefore likely an accurate representation of the Vix Technology Group's corporate structure and employee count at the time of the loan application.

39.     The Vix Technology Group members wholly owned by Vix AFC include:

- Vix Technology (Scandinavia) AB in Sweden, which wholly owns
    - Vix Technology (Norway) AS in Norway,
    - Vix Technology Italia Sri in Italy, and
    - Vix Technology (Belgium) NV in Belgium, which wholly owns
        - Vix Tech (France) SA in France;
- Vix Technology UK Ltd in the United Kingdom;
- Vix AFC (Sing) Pte Ltd. in Singapore;
- Vix Mobility Pty Ltd in Australia, which wholly owns
    - Vix Transportation Systems Pty Ltd in Australia, which wholly owns
        - Vix Technology (Aust) Pty Ltd in Australia, and
        - Vix Holdings Pty Ltd in Australia, which wholly owns
            - Vix Engineering Pty Ltd in Australia,
            - Vix IP Pty Ltd in Australia, and
            - Vix Technology (USA) in the United States;
- Vix Technology (East Asia) Ltd in Hong Kong SAR, which wholly owns
    - Vix Technology (Bangkok) Co., Ltd. in Thailand; and
- Vix Technology (Malaysia) Sdn Bhd in Malaysia.

40.     Vix AFC's FY 2021 Report stated that ICM Mobility Group Ltd. owned 100% of Vix AFC Ltd. and that as the "parent company," it "exercises control over the [Vix Technology] Group."

41.     Upon information and belief, the Vix Technology Group companies were also affiliated through common management.

42.     The "affiliation based on management" test states that:

COMPLAINT AND JURY DEMAND - 8

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

43. According to the VIX USA's secretary of state filings, from approximately July 7, 2020 to August 18, 2021, its CEO was Shane Quinn, and its Directors/Governors were Shane Quinn and Martyn Jenkins. Upon information and belief, Quinn was CEO of all of the Vix Technology Group entities prior to and for a short time after the acquisition.

44. Shane Quinn and Martyn Jenkins were also Directors of Vix Technology UK Ltd. for FY 2021 ending June 30, 2021. Vix AFC's FY 2021 Report indicates that Quinn and Jenkins resigned from that entity as Directors on April 21, 2021, but that Quinn remained as CEO.

45. Accordingly, as all of the companies in the Vix Technology Group were upon information and belief collectively operated by the same central management with, upon information and belief, a common CEO, this is another reason they were affiliated for purposes of PPP loan eligibility.

**D.    Application of the Eligibility Test**

46. Eligibility under the Second Draw PPP loan program is simple: have 300 employees or fewer, including affiliates. Revenue and alternative size standards were not considered.

47. Vix AFC's FY 2021 Report stated that the Vix Technology Group employed an average of 545 employees in FY 2021 (meaning May and June 2021).

**COMPLAINT AND JURY DEMAND - 9**

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

48. If the PPP loan application was submitted prior to completion of the acquisition, it may not have been appropriate to include the 137 employees of Vix Technology UK Ltd., which had been acquired by Vix AFC in 2020. Regardless, Vix USA would still have exceeded 300 total employees when including the other members of the Vix Technology Group.

## FALSE CERTIFICATIONS

49. Version 1 of the Second Draw PPP Borrower Application Form, effective January 8, 2021, required the applicant to certify in good faith that, *inter alia*:

   a. The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).

   b. The Applicant, together with its affiliates (if applicable)... employs no more than 300 employees...

   c. I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

50. Subsequent versions of the applications had similar certifications.

51. The loan application also required applicants to report "Number of Employees (including affiliates, if applicable; may not exceed 300 unless "per location" exception

COMPLAINT AND JURY DEMAND - 10

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

applies)."

52. Vix USA had to make these certifications to have received PPP funds, and the certifications were material and false when made because the applicant failed to adequately consider its affiliated entities.

## CONCLUSION

53. Vix USA was a part of a multinational conglomerate that did not qualify for PPP funds intended for small businesses. It and its affiliated company had already benefited from over $1 million in a First Draw loan due to some confusion in the program requirements. By the Second Draw, that confusion had been cleared up, but Vix USA nevertheless applied for an additional loan and forgiveness.

54. Vix USA should be required to repay the loan, interest, and processing fees, plus penalties.

## COUNT I
## VIOLATIONS OF 31 U.S.C. § 3729
## FALSE CLAIMS ACT

55. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

56. As set forth above, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

57. As set forth above, Defendant knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

58. Due to Defendant's conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

COMPLAINT AND JURY DEMAND - 11

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

59. Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendant:

On behalf of the United States:

a) awarding the United States treble damages sustained by it for each of the false claims or improperly retained payments;

b) awarding the United States a maximum civil penalty for each of the false claims, records, or statements;

c) awarding Relator the maximum share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

d) awarding Relator litigation costs, expenses, and reasonable attorneys' fees; and

e) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

DATED this 21st day of June, 2024.

McNAUL EBEL NAWROT & HELGREN PLLC

By: /s/ Malaika M. Eaton
Malaika M. Eaton, WSBA No. 32837

600 University Street, Suite 2700
Seattle, Washington 98101
206-467-1816
meaton@mcnaul.com

**COMPLAINT AND JURY DEMAND - 12**

*and*

Jason Marcus
(*Pro Hac Application to be submitted*)
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3355 Lenox Rd., Suite 660
Atlanta, Georgia 30326
Tel: (770) 988-5035
Fax: (678) 648-5544
Jason@FCACounsel.com

Attorneys for Relator Sidesolve LLC

COMPLAINT AND JURY DEMAND - 13

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816